UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
EMPIRE UNITED LINES CO., INC.,               :
                                             :
                           Plaintiff,        :
                                             :                    **MEMORANDUM & ORDER**
            -against-                        :                    15-CV-557 (DLI) (RER)
                                             :
ANDREJUS PRESNIAKOVAS and BALTIC             :
AUTO SHIPPING, INC.,                         :
                                             :
                           Defendants.       :
----------------------------------------------------------------x
**DORA L. IRIZARRY, Chief United States District Judge:**

Plaintiff Empire United Lines Co. Inc. ("Empire" or "Plaintiff") filed this diversity action against Andrejus Presniakovas ("Presniakovas") and Baltic Auto Shipping, Inc. ("Baltic") (collectively, "Defendants") on February 4, 2015, and advanced three causes of action: (1) breach of contract; (2) fraud in the inducement to contract; and (3) unjust enrichment. *See* Complaint ("Compl."), Dkt. Entry No. 1. Defendants answered and brought two counterclaims against Empire: (1) fraud in the inducement to contract; and (2) civil conspiracy. *See* Answer & Counterclaims ("Answer"), Dkt. Entry No. 8; *see also* Def. Mem. of Law in Opp. to Pl. Mot. to Strike Aff. Defs. & Dism. Countercls. ("Strike Opp."), Dkt. Entry No. 25 at 16-19 (characterizing the counterclaims contained in the Answer).

There are three motions presently before the Court. The first motion, filed by Empire on March 19, 2015, sought to strike certain affirmative defenses under Federal Rule of Civil Procedure 12(f), dismiss both counterclaims under Rule 12(b)(6), and, in the alternative, secure a more definite statement as to the counterclaims under Rule 12(e). *See* Mem. of Law in Supp. of Mot. to Strike Aff. Defs. & Dism. Countercls. ("Strike Mot."), Dkt. Entry No. 12. Defendants opposed. *See* Strike Opp. Empire did not file a reply brief. In the second motion, filed on May 18,

2015, Empire moved to voluntarily dismiss this action, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2). *See* Aff. of Jon Werner in Supp. of Mot. for Vol. Dismiss. ("Dism. Mot."), Dkt. Entry No. 18. Defendants opposed this motion, requested leave to replead the counterclaims, and "cross-moved"[1] for attorneys' fees. *See* Def. Mem. of Law in Opp. to Pl. Mot. for Vol. Dismiss. ("Dism. Opp."), Dkt. Entry No. 20. Empire did not file any reply papers.

For the reasons set forth below, Plaintiff's motion to voluntarily dismiss its claims is granted; the counterclaims are dismissed; Plaintiff's motions to strike affirmative defenses and for a more definite statement are denied as moot; Defendants' requests for leave to replead and attorneys' fees are denied; and this proceeding is terminated.

## BACKGROUND

### I. FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Empire is a maritime non-vessel common carrier that purchases space on commercial ships and resells that space to its customers. Compl. at ¶ 6. Presniakovas is the president of Baltic which, in turn, regularly purchased space from Empire in order to export vehicles from the United States. *Id*. at ¶¶ 3, 7-8. Over the course of approximately two years, from 2009 to 2011, Empire arranged to transport hundreds of Baltic's shipments. *Id*. at ¶ 8.

In October 2010, Presniakovas personally met with Michael Hitrinov ("Hitrinov"), Empire's president, at a café in Brooklyn, New York, to secure a loan.[2] *Id*. at ¶ 9-10. Under the terms of the Loan Agreement ("Agreement") prepared by Presniakovas, Empire would lend him $200,000.00, for the term of one month, at a monthly interest rate of one percent. *Id*. at ¶¶ 11-12;

---

[1] Defendants did not file a notice of motion as to their request for attorneys' fees.

[2] The parties dispute the characterization of the loan. Plaintiff alleges that the loan was personal and meant to assist Presniakovas in purchasing a home. *See* Compl. at ¶ 10. Defendants allege that the loan was meant to "assist[] Baltic with its cash flow" for November 2010. Answer at p. 7. Given the procedural posture of this case, the purpose of the transaction is inconsequential.

*See also* Loan Agreement ("Pl. Ex. A"), Dkt. Entry No. 1-1. The collateral offered for the loan was the cargo owned by Baltic (*i.e.*, cars and shipping containers), but physically possessed by Empire at the time of contract. *See* Compl. at ¶ 13; Pl. Ex. A. Empire transmitted the funds to Baltic via a wire transfer on November 3, 2010. Compl. at ¶ 17; *See also* Wire Transfer Confirm. ("Pl. Ex. B"), Dkt. Entry No. 1-2.

After the parties engaged in some limited discovery, Empire "discovered that the principal amount of the loan, had in fact been repaid," determined that it no longer had any viable claims, and moved to voluntarily dismiss this proceeding without prejudice. Dism. Mot. at ¶ 9.

## II. FACTUAL ALLEGATIONS IN DEFENDANTS' COUNTERCLAIMS

According to Defendants, Empire offered a $200,000.00 loan to Baltic for the purpose of assisting with the latter's "cash flow" in November 2010. Answer at p. 7. Baltic relied upon this representation and accepted the loan. *Id*. However, Defendants allege that Empire's "true purpose" was not to assist Baltic, but rather, to try and collect the debt owed on the loan twice. *Id*. This litigation is proof of the alleged plot. *Id*. The scheme was a common objective pursued by Empire, Hitrinov, and an Empire employee, Yuliya Mikhalkevich. *Id*. at p. 8.

## III. THE PARTIES' HISTORY OF LITIGATION

The history of litigation between the parties in this case tells the story of a business relationship gone sour. In the years that have passed between the loan being made and this case being filed, the parties have become litigious adversaries. In 2011, Baltic brought suit against Hitrinov and Empire in the United States District Court for the District of New Jersey ("DNJ") for, *inter alia*, breach of contract, breach of fiduciary duty, conversion, and civil conspiracy ("2011 Action"). *See Baltic Auto Shipping, Inc. v. Hitrinov*, No. 11-CV-6908 (FSH) (PS), Dkt. Entry No.

1 (D.N.J.). That case was dismissed by stipulation between the parties two weeks after the action was filed. *Id.*, Dkt. Entry No. 4.

On November 28, 2014, Baltic initiated another action against Plaintiff before the Federal Maritime Commission ("FMC") claiming that Empire had violated the Shipping Act of 1984 ("FMC Action"). *See Baltic Auto Shipping, Inc. v. Hitrinov*, F.M.C. No. 14-16, Doc. Entry No. 1. Shortly after the FMC Action was filed, Plaintiff brought suit in the DNJ, claiming that Baltic violated the terms of the 2011 Action's settlement agreement by filing the FMC Action ("2015 Action"). *See Empire United Lines Co., Inc. v. Baltic Auto Shipping, Inc.*, No. 15-CV-355 (CCC) (MF), Dkt. Entry No. 1 (D.N.J.). The 2015 Action was terminated by settlement in June 2016. *Id.*, Dkt. Entry No. 72. The FMC Action was dismissed, in part, by an April 21, 2017 decision that granted Baltic's request to withdraw its exceptions to the FMC and discontinue the action. *See Baltic Auto Shipping, Inc.*, F.M.C. No. 14-16, Doc. Entry No. 94. The only remaining question pending before the FMC is whether attorneys' fees will be awarded. *Id*.

So far as the Court is aware, this litigation is the only other case between the parties.

## DISCUSSION

I. **PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS ITS COMPLAINT WITHOUT PREJUDICE**

"Once a defendant has answered a complaint, a plaintiff may no longer dismiss [its] suit as of right." *D'Alto v. Dahan Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996). Rather, at this juncture, the decision as to whether Empire may dismiss its action lies within the discretion of the Court. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990). In pertinent part, Federal Rule of Civil Procedure 41(a)(2) states:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may

> be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.

Of course, when counterclaims are compulsory, as they are here, the Court may retain jurisdiction over the counterclaims, even if the plaintiff's claims are dismissed. *See Ascentive, LLC v. Opinion Corp.*, No. 10-CV-4433 (ILG) (SMG), 2012 WL 1569573, at *3 (E.D.N.Y. May 3, 2012) (internal citations omitted). As such, the counterclaims could remain for independent adjudication.

In applying Rule 41(a)(2), the Second Circuit Court of Appeals has noted the existence of two "lines of authority" as to when "dismissal without prejudice might be improper." *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (internal citations and quotation marks omitted). Under the first line of cases, "dismissal would be improper if the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id*. (internal citations and quotation marks omitted). Here, dismissal under this line of authority would be proper, as Defendants make no argument about prejudice aside from citing the possibility that they might be subject to a duplicative action at some point in the future. *See* Dism. Opp. at 2-3.

As for the second line of cases, the Court weighs the "*Zagano* factors," which are:

> (1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss.

*Id*. at 230 (quoting *Zagano*, 900 F.2d at 14). The majority of these factors favor Plaintiff.

Empire diligently brought its motion to dismiss. "When assessing a plaintiff's diligence, courts consider the length of time the action has been pending." *In re Bank of Am. Mortg. Serv'g S'holder Derivative Litig.*, No. 11-CV-2475 (WHP), 2012 WL 1506271, at *2 (S.D.N.Y. Apr. 4, 2012) (internal citations and quotation marks omitted). Here, Plaintiff's motion was made little

more than three months after the action was filed, and approximately one month after it determined its claims were meritless. *See* Dism. Mot. at ¶¶ 8-9. In acting so efficiently and quickly to terminate its claims, Plaintiff was diligent. *See Kwan*, 634 F.3d at 231 (defendants were diligent in moving to dismiss their counterclaims three months after plaintiff's claims were dismissed); *Catanzano v. Wing*, 277 F.3d 99, 110 (2d Cir. 2001) (finding that "plaintiffs were not dilatory in bringing the motion but did so in order to facilitate an end of litigation").

The vexatiousness is neutral as to Plaintiff's motion. "In cases where there is no evidence to suggest that the case was brought to harass the defendant, or that a plaintiff had ill-motive, dismissal without prejudice is favored." *Staten Is. Terminal LLC v. Elberg*, No. 11-CV-3262 (RRM) (LB), 2012 WL 1887126, at *4 (E.D.N.Y. May 23, 2012) (internal citations and quotation marks omitted). Although the case might have been avoided had Plaintiff been more cautious in its review of its own bank records before filing suit, the Court is not convinced that Plaintiff's motive in bringing suit was improper. Furthermore, while Defendants submit copies of messages between counsel concerning other proceedings in other forums, there is nothing in those messages that necessarily indicates that this case was brought in bad faith. *See* Aff. of Marcus A. Nussbaum in Opp. to Pl. Mot. for Vol. Dism. ("Nussbaum Aff."), Dkt. Entry No. 20-1 at pp. 11-16, 20-21, 36-37. If anything, Defendants' own submissions reveal that they share responsibility for the very existence of this litigation. *See* discussion *infra*.

The three remaining factors favor granting Plaintiff's motion. With respect to expense of the suit, at the time of the motion, there is "no indication that the parties have expended efforts or expense in preparing for trial as there is no pre-trial order, no trial date has been set, and," no depositions had been held. *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (SJF) (WDW), 2009 WL 393949, at *5 (E.D.N.Y. Feb. 17, 2009). In fact, Defendants take the position that discovery

is not yet complete.[3] *See* Def. Nov. 23, 2015 Ltr., Dkt. Entry No. 27. The Court also finds that there is no serious prospect of duplicating litigation expenses, as there is little chance that Empire could relitigate its claims. Plaintiff has admitted that the loan has been repaid, but for a "modest amount" that it no longer wishes to pursue. Dism. Mot. at ¶ 9. Assuming that Plaintiff could find a way to retract that representation, it also would now contend with the applicable statutes of limitations. *See* N.Y. C.P.L.R. § 213. Furthermore, even if Plaintiff could overcome its representation *and* the hurdles potentially created by the statutes of limitations, it appears that the effort expended in this litigation easily could be applied in any future proceeding concerning the existence and repayment of the loan. *See Steward v. Womack Material Handling Sys., Inc.*, No. 06-CV-1648 (LDW) (ETB), 2009 WL 4891808, at *4 (E.D.N.Y. Dec. 11, 2009).

Based upon the foregoing, Plaintiff's request is meritorious under either "line of authority." Accordingly, Empire's motion for voluntary dismissal pursuant to Rule 41(a)(2) is granted. Moreover, as a result of the voluntary dismissal, Plaintiff's motion to strike certain affirmative defenses to the claims is denied as moot.

## II. PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

"In deciding a motion to dismiss a counterclaim for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the allegations in the counterclaim as true and draw all reasonable inferences in the counterplaintiff's favor." *Mercer Capital, Ltd. v. U.S. Dry Cleaning Corp.,* No. 08-CV-5763 (LTS) (JCF), 2009 WL 2163598, at *3 (S.D.N.Y. July 21, 2009) (internal citations omitted). "To survive a motion to dismiss, [the counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v.*

---

[3] Pursuant to the Case Management Plan, all discovery was to be completed by September 25, 2015. *See* Case Mgmt. Plan, Dkt. Entry No. 19.

7

*Twombly,* 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown . . . that the pleader is entitled to relief." *Ashcroft,* 556 U.S. at 679 (citations and internal quotations omitted). A counterclaim does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The pleader's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

### A. Counterclaim One: Fraudulent Inducement to Contract

In order to state a claim for fraudulent inducement to contract under New York State law, one must allege "(1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury. *Aetna Cas. & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 580 (2d Cir. 2005) (citing *Helmsley-Spear v. Westdeutsche Landesbank,* 692 F. Supp. 194, 203 (S.D.N.Y. 1988)). The misrepresentation upon which the complainant allegedly relied must concern a then-present fact, not future intent, and must be "collateral or extraneous" to the terms of the enforceable agreement between the parties. *See Trionic Assocs., Inc. v. Harris Corp.*, 27 F. Supp.2d 175, 182-83 (E.D.N.Y. 1998) (internal citations omitted).

In addition to meeting the elements for stating the claim under New York State law, pursuing a claim for fraudulent inducement in this forum means that it also must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Aetna Cas. & Surety Co.*, 404 F.3d at 580 (citing *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986)). Under Rule 9(b), a claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Kardovich v. Pfizer, Inc.*, 97 F. Supp.3d 131, 136-37 (E.D.N.Y. 2015) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Defendants allege Empire's president claimed that the purpose of the loan was to "assist[] Baltic with its cash flow for the month of November of 2010." Answer at p. 7. Without explaining what the money was actually used for, Defendants claim that they relied upon this stated purpose. *Id*. Yet, despite this claim, Defendants allege that, in actuality, the "true purpose in offering the loan was to attempt to collect twice for the same amount," as evidenced by the present suit. *Id*.

Without addressing the sufficiency of the factual allegations, even if the Court accepts the allegation that the grantor possessed a furtive intent to try and collect twice the amount owed on the loan, Defendants' counterclaim for fraudulent inducement to contract must be dismissed because it seeks redress for an alleged bad intent, not for a misrepresentation of present material fact. *See Mexican Hass Avocado Importers Assoc. v. Preston/Tully Grp. Inc.*, 838 F. Supp.2d 89, 98 (E.D.N.Y. 2012) ("Insincere promises of future performance under a contract . . . are not collateral or extraneous and are insufficient to allege fraud.") (internal citations omitted); *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp.2d 147, 164 (E.D.N.Y. 2012) ("[A]n insincere promise of future performance under a contract . . . is insufficient to allege fraud.") (internal citations omitted); *Zinter Handling, Inc. v. Gen. Elec. Co.*, No. 04-CV-500 (GLS) (DRH), 2005 WL 1843282, at *6 (N.D.N.Y. Aug. 2, 2005) (allegation that the party entered into a contract without the intent to perform does not support a claim for fraud) (internal citations omitted); *Trionic Assocs., Inc.*, 27 F. Supp.2d at 182-83 (internal citations omitted); *Hudson Optical Corp. v. Cabot Safety Corp.*, 971 F. Supp. 108, 109 (E.D.N.Y. 1997) (internal citations omitted).

### B. Counterclaim Two: Civil Conspiracy

As for the remaining counterclaim, "a plaintiff must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *NorGuard Ins. Co. v. Lopez*, No. 15-CV-5032 (DRH) (AYS), 2017 WL 354209, at *14 (E.D.N.Y. Jan. 24, 2017) (internal citations and quotation marks omitted). In stating a claim of civil conspiracy under New York State law, while a plaintiff need not meet the "rigorous requirements of Rule 9(b)," *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778, 794 (S.D.N.Y. 2008) (internal citations omitted), it nevertheless must provide "specific allegations, including the times, facts, and circumstances of the alleged conspiracy. *Am. Bldg. Maint. Co. of New York v. ACME Prop. Servs., Inc.*, 515 F. Supp.2d 298, 318 (N.D.N.Y. 2007) (internal citations omitted).

Although it was unclear on the face of the pleading, Defendants argue that the predicate tort underlying the claim for civil conspiracy is fraudulent inducement to contract. *See* Strike Opp. at 18-19. Even assuming that the pleading clearly identifies fraudulent inducement to contract as the initial tort, the counterclaim for civil conspiracy must be dismissed because Defendants fail to state a claim for fraudulent inducement to contract. *See McCall v. Chesapeake Energy Corp.*, 509 F. App'x 62, 65 (2d Cir. 2013) (explaining that since "the claims that could have provided a basis for the civil conspiracy claim were dismissed, [the civil conspiracy claim] must also fail as a matter of law"); *Alexander & Alexander of N.Y., Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986) ("Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort.") (internal citations omitted). Consequently, Plaintiff's motion for a more definite statement as to the counterclaims is denied as moot.

## III. DEFENDANTS' MOTION FOR LEAVE TO REPLEAD

In passing, Defendants ask that, "in the event the Court finds the . . . pleading defective as to any cause of action against plaintiff," they be granted leave to replead their counterclaims. Strike Opp. at 19-20. According to Federal Rule of Civil Procedure 15(a)(2), "The court should freely give leave when justice so requires." However, "the district court has discretion whether or not to grant leave to amend, and its discretion is not subject to review on appeal except for abuse of discretion." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (internal citations and quotation marks omitted). "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Id*. (internal citations omitted).

In making this request, Defendants solely rely on the Second Circuit Court of Appeals' decision in *Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664 (2d Cir. 1989). *See* Strike Opp. at 19-20. In that case, the Circuit reversed that portion of the district court's opinion that denied the plaintiff's request for leave to replead its RICO claim. *Kable News Co.*, 884 F.2d at 668-69. In examining the complaint, the Circuit noted that "[a] reading of the amended complaint and accompanying submissions leads us to conclude that plaintiff's RICO claim is at least potentially viable." *Id*. at 668. As for the application of Rule 15(a), the Circuit observed that, when claims are dismissed as deficient under Rule 9(b), as they were in that case, "leave to amend is usually afforded." *Id*. at 669 (internal citations and quotation marks omitted). Defendants' reliance on this case is flawed, as the facts in *Kable News Co.* are readily distinguishable from the situation currently before this Court for two reasons. First, Defendants' counterclaims were dismissed for fatal flaws in the underlying theories of liability, not the sufficiency of the factual allegations. *See*

11

discussion *supra*. Second, and perhaps more importantly, given the basis for dismissal of the counterclaims, the Court does not believe that either of them are "at least potentially viable."

As for the application of Federal Rule of Civil Procedure 15(a)(2), Defendants have not given any indication as to what would change in an amended pleading or how any additional information or allegations would overcome the infirmities of their counterclaims. Indeed, Defendants did not even file a proposed amended pleading for the Court's review. *See Rosendale v. Iuliano*, 67 F. App'x 10, 14 (2d Cir. 2003) ("Without a proposed pleading, the district court could not determine whether [the plaintiff's] claim could survive a motion to dismiss, whether it was futile, or whether it was frivolous.") (internal citation omitted); *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (failing to submit a proposed amended pleading "indicates lack of diligence and good faith") (internal citation omitted).

Since Defendants have failed to submit a proposed pleading for the Court's review or provide any indication that additional facts or repleading would overcome the above-referenced failings, the request for leave to replead the counterclaims is denied.

### IV. DEFENDANTS' MOTION FOR ATTORNEY'S FEES

Finally, in a slipshod application, without supplying any documentation to substantiate their claim, Defendants wedge a request for an award of "well over $35,000 [spent] in defending the case" into their opposition papers. *See* Dism. Opp. at 8-9. The failure to provide any documentation, alone, demands that the request be denied. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("Hereafter, any attorney . . . who applies for court-ordered compensation in this Circuit for work done . . . must document the application with contemporaneous time records."). However, even if Defendants had submitted the appropriate records, this Court still would not be inclined to grant the application. Without

minimizing any conduct on Plaintiff's part, looking solely at Defendants' behavior, the Court finds that awarding attorneys' fees to Defendants would be neither proper nor equitable.

In addition to dismissing the counterclaims for failure to state a claim and denying the incomplete request for leave to replead those counterclaims, the Court previously denied Defendants' two frivolous motions for sanctions under Federal Rule of Civil Procedure 11. *See* Aug. 30, 2016 Min. Entry. Beyond these failings, one factual item is particularly noteworthy: Defendants' counsel admits that he received an e-mail from Plaintiff's counsel asking for "confirmation that the loan had been repaid." Dism. Opp. at 5. Indeed, the e-mails *submitted by Defendants* bear out that Defendants' counsel was asked twice, on December 19, 2014 and on January 12, 2015, for documentation proving that the subject loan was repaid. *See* Nussbaum Aff. at p. 23. In response to the messages, in the words of defense counsel, he affirmatively "ignored" those requests. Nussbaum Aff. at p. 3; *See also* Dism. Opp. at 5. Instead of staving off needless litigation between litigious parties, Defendants' counsel chose to risk it by ignoring the messages.

In the circumstances of this case, the Court finds that both sides of the dispute own this quagmire, and neither shall be free of the consequences of needlessly taking combative postures and failing to act reasonably. The motion for attorneys' fees is denied and each party is to bear its own costs.

## **CONCLUSION**

For the reasons stated above, Empire's motion to voluntarily dismiss its claims is granted, Defendants' counterclaims are dismissed for failing to state a claim, and Defendants' requests for leave to replead and attorneys' fees are denied. The parties are admonished that the pursuit of any further non-meritorious litigation may result in sanctions.

SO ORDERED

Dated: Brooklyn, New York
September 22, 2017

/s/
DORA L. IRIZARRY
Chief Judge